IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE HERSHEY COMPANY,** | : | **NO. 1:07-CV-1363** |
| **HERSHEY CHOCOLATE &** | : | |
| **CONFECTIONERY CORPORATION** | : | |
| **and HERSHEY ENTERTAINMENT &** | : | |
| **RESORTS COMPANY,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PAGOSA CANDY COMPANY, THE** | : | |
| **CHOCOLATE ROBIN** | : | |
| **CORPORATION, and ROBIN L.** | : | |
| **CARPENTER,** | : | |
| | : | |
| **Defendant** | : | |

**M E M O R A N D U M**

Before the court is a motion to dismiss for lack of personal jurisdiction
pursuant to Fed. R. Civ. P. 12(b)(2) or improper venue pursuant to Fed. R. Civ. P.
12(b)(3) filed by Defendant Pagosa Candy Company ("Pagosa").  Pagosa argues that
Plaintiff's claims of trademark infringement, unfair competition and trademark
dilution should be dismissed because this court lacks personal jurisdiction.  In the
alternative, Pagosa argues that change of venue is appropriate pursuant to 28 U.S.C.
§ 1404.  For the reasons that follow, this court finds that personal jurisdiction over
Pagosa in this judicial district is not proper.  Rather than dismissing the case
altogether, Pagosa's request for change of venue will be granted, and the action will
be transferred to the District Court of Colorado pursuant to 28 U.S.C. § 1406(a).

**I.**          <u>**Background**</u>

In deciding a motion to dismiss, the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) . "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Id.* For the purposes of this motion to dismiss, the court sets forth the facts stated in Plaintiffs' complaint and accepts them as true.

The Plaintiffs in this case (collectively, "Hershey") are The Hershey Company, Hershey Chocolate and Confectionary Corporation ("Hershey Chocolate") and Hershey Entertainment and Resorts Company ("Hershey Entertainment"). Hershey Chocolate owns certain trademarks that it licenses to The Hershey Company and Hershey Entertainment. Those trademarks include "Hershey The Sweetest Place on Earth," "The Sweetest Place on Earth," and other phrases containing the words "The Sweetest Place" or "The Sweetest" followed by references to locations associated with Hershey Chocolate and the town of Hershey,

Pennsylvania.  Hershey Chocolate and its licensees have been using these marks in this manner for almost twenty years.  Hershey's substantial use and promotion of the marks make them well known and distinctive of its products, services and business and have created an excellent reputation among actual and potential purchasers of its products.  (Doc. 18 ¶ 17.)  By virtue of the extended use and widespread recognition of these marks, they are distinctive and famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  (*Id*. ¶ 18.)

       Hershey acts with diligence in monitoring the unauthorized use and misuse its marks.  After Hershey began using its "Sweetest Place" marks, it discovered that Pagosa Candy Company was using the slogan "The Sweetest Place in the Rockies" on its internet web site in connection with its candy business.  Pagosa Candy Company is the trade name of The Chocolate Robin Corporation, a closely-owned S-type Colorado corporation, with a principal place of business located in Pagosa Springs, Colorado.  Hershey considered Pagosa's use of "The Sweetest Place in the Rockies" an infringement of its trademarks.  Hershey contacted Pagosa in a letter dated March 29, 2007 complaining about the slogan and demanding Pagosa cease using it.  Hershey received no reply to this demand letter and an additional demand letter sent on April 23, 2007.  (*Id*. ¶¶ 21-22.)  However, Pagosa did respond to Hershey's third demand letter of May 24, 2007.  Pagosa's response included a denial that the slogan was an infringement of Hershey's marks. (*Id*. ¶ 23.)

Accordingly, Hershey filed a complaint against Pagosa on July 26, 2007, alleging various trademark violations seeking damages and injunctive relief.[1] (Doc. 1.)  Pagosa was granted two extensions and then filed a motion to dismiss or transfer venue for lack of jurisdiction on October 29, 2007.  (Doc. 13.)  Hershey filed an amended complaint reiterating its earlier allegations on November 20, 2007. (Doc. 18.)  Hershey asserts that this court has personal jurisdiction over Pagosa because Pagosa is using its infringing slogan in advertising directed to Pennsylvania, Pagosa distributes products offered and sold in connection with the infringing slogan in Pennsylvania, and Pagosa does business in the Commonwealth through its website and through "agents" in Pennsylvania.  (*Id.* ¶ 12.)  Pagosa filed a motion to dismiss for lack of jurisdiction or transfer venue presently before the court on December 5, 2007.  (Doc. 19.)  The issues have been fully briefed and are now ripe for disposition.

## II.        Legal Standard: 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

"Once [a court's jurisdiction] is challenged, the burden rests upon the plaintiff to establish personal jurisdiction."  *Gen. Elec. Co. v. Deutz Ag*, 270 F.3d 144, 150 (3d Cir. 2001) (citing *Mellon Bank (East) PSFS, Nat'l. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).  A plaintiff may meet this burden by "establishing with reasonable particularity sufficient contacts between the defendant

---

[1]  Hershey alleges trademark violations under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and a false designation of origin in violations under § 43(a) of the Lanham Act,  15 U.S.C. § 1125(a); dilution of trademark under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and 54 Pa.. Cons. Stat. § 1124, and common law unfair competition and deceptive trade practices violations.

and the forum state." *Mellon Bank*, 960 F.2d at 1223 (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d. Cir. 1987)). "A court must take 'specific analytical steps' when determining whether it can assert personal jurisdiction over a non-resident defendant." *Accuweather, Inc., v. Total Weather, Inc.*, 223 F. Supp. 2d 612, 613 (M.D. Pa. 2002) (quoting *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998)).

The analysis becomes more complex when internet contacts are offered as a basis for a court's exercise of personal jurisdiction over a non-resident defendant. The internet allows businesses and customers to communicate with each other from anywhere in the world. Customers can also place orders from anywhere in the world. Because the internet has no boundaries, a court must consider whether the electronic contacts between the remote party and the party in the forum state are sufficient to satisfy the "minimum contacts" element of the personal jurisdiction analysis. *See* G. Peter Albert, Jr., et al., *Intellectual Property Law in Cyberspace 2006 Cumulative Supplement* 14-5 (2006). Courts in this circuit have addressed this specific issue, but the starting point in every analysis is the traditional personal jurisdiction framework.

## A.   <u>Personal Jurisdiction</u>

A federal district court sitting in Pennsylvania has jurisdiction over non-resident parties to the extent provided by Pennsylvania law. *See* Fed. R. Civ. P. 4(e); *see also Mellon Bank*, 960 F.2d at 1221. Pennsylvania's long-arm statute allows a court to exercise jurisdiction over a non-resident defendant "to the fullest extent allowed under the Constitution of the United States and may be based upon the most minimum contact with this Commonwealth allowed under the Constitution

of the United States." *See* 42 Pa. Cons. Stat. § 5322(b); *see also Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). Accordingly, the reach of Pennsylvania's long-arm statute is "coextensive with the due process clause of the United States Constitution." *Time Share*, 735 F.2d at 63. The due process clause of the United States Constitution requires a non-resident defendant to have certain minimum contacts with the forum state in order for a court in that forum to properly exercise personal jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). General jurisdiction may be exercised over a non-resident defendant when the defendant has "continuous and systematic" contacts with the forum state. *Int'l Shoe*, 326 U.S. at 318.

        If the defendant does not have continuous and systematic contacts with the forum state, the defendant may be subject to specific jurisdiction in the forum state. *Deutz Ag*, 270 F.3d at 150 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)). Three elements must be established in order to warrant specific jurisdiction. *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1122-23 (W.D. Pa. 1997). First, the cause of action must "arise[] out of the defendant's contacts with the forum." *Helicopteros Nacionales*, 466 U.S. at 414 n.8. Second, the defendant must have "purposefully established 'minimum contacts' with the forum." *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe*, 326 U.S. at 316). Finally, the exercise of personal jurisdiction must be reasonable, and must not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen*, 444 U.S. at 292 (quoting *Int'l Shoe*, 326 U.S. at 316).

To establish the minimum contacts necessary to assert specific jurisdiction the defendant must have "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109 (1987) (quoting *Burger King*, 471 U.S. at 475). "Defendants who 'reach out beyond one state' and create continuing relationships and obligations with the citizens of another state are subject to regulation and sanctions in the other state for the consequences of their actions." *Zippo*, 952 F. Supp. at 1123 (quoting *Burger King*, 471 U.S. at 473). Specific jurisdiction is established when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. However, specific jurisdiction is not established if the non-resident defendant's conduct in the forum state is "random, isolated or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

## B.  Personal Jurisdiction Based on Internet Contacts

Several cases in this circuit have addressed whether and how a non-resident defendant's Internet contacts may establish personal jurisdiction in Pennsylvania. In *Zippo*, the court developed a sliding scale for evaluating a non-resident defendant's internet contacts with the forum state. 952 F. Supp. at 1124. The court held that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the [i]nternet." *Id*. At one end of the *Zippo* sliding scale, personal jurisdiction is properly exercised over defendants who actively conduct business from a commercial web site. *See id.* If the defendant's web site

7

allows it to "enter[] into contracts with residents of a foreign jurisdiction . . . involv[ing] the knowing and repeated transmission of computer files over the internet," then the site falls into the "commercial" category.  *See id.*  Defendants who maintain a "commercial" web site may be expected to submit to the personal jurisdiction of courts within the forum state.  *See id.*  At the other end of the scale are operators of passive web sites that simply make information available to any viewer that may be interested.  *See id.*  Operators of these "passive" web sites have not engaged in conduct sufficient to justify the exercise of personal jurisdiction over them.  *See id.*  "Interactive" web sites occupy the middle ground between passive and commercial sites.  *See id.*  These sites allow the exchange of information between a user and the host computer, and depending on the level of interactivity and the commercial nature of the exchange of information, personal jurisdiction may be proper.  *Id.*

In *Zippo*, the defendant used its commercial internet web site to generate approximately 3,000 subscribers in Pennsylvania.  *Id.* at 1126.  The defendant also entered into seven contracts with an internet access provider to make its services available to its customers in Pennsylvania.  *Id.*  The court in *Zippo* found that this conduct constituted "the purposeful availment of doing business in Pennsylvania."  *Id.*  The fact that the defendant processed Pennsylvania residents' subscription requests dispelled the notion that these contacts were fortuitous, because the defendant "repeatedly and consciously chose" to assign the customers passwords, and the defendant "knew that the result of this processing would be the transmission of electronic messages into Pennsylvania."  *Id.*

Several other district court decisions in this Circuit have expounded on the purposeful availment element of specific personal jurisdiction.  In *Desktop Technologies, Inc. v. Colorworks Reproduction & Design, Inc.*, No. 98-5029, 1999 WL 98572, at *5 (E.D. Pa. Feb. 25, 1999), the court  explained that there must be "something more" than "simply registering someone else's trademark as a domain name and posting a web site on the [i]nternet to demonstrate that the defendant directed its activity towards the forum state."  In *Desktop Technologies*, a web site trademark dispute,  the defendant's only contacts with the forum state were its internet presence and email link.  *Id.* at *6.  Visitors to the web site could exchange information over the web site.  *Id.* at *5.  The court held that exchanging information is not "doing business over the [i]nternet with residents of Pennsylvania."  *Id.* at *6.  The court declined to exercise personal jurisdiction because "publication of a page on the web, without more, is not an act by which a party purposefully avails itself of the privilege of conducting business in the forum state."  *Id.* at *5.

In *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F. Supp. 2d 537, 540 (E.D. Pa. 1999), the court recognized that if a web site targets a particular remote jurisdiction, such directed activity properly gives rise to personal jurisdiction within the target forum.  In *Morantz,* another web site trademark dispute, the defendant operated a web site that allowed viewers to order promotional materials, download an order form and make contact via a toll free telephone number.  *Id*. at 538.  The record revealed that neither the web site nor the phone number were directed toward Pennsylvania residents.  *Id*. at 542.  The defendant did not advertise in publications or media that targeted Pennsylvania.  *Id*.  The defendant's single sale of a cleaner and several videotapes to Pennsylvania residents over a period of two

years constituted "fortuitous" contacts because they did not rise to the "kind of contacts contemplated in *Zippo*." *Id.* The court held that the defendant's web site did not specifically target Pennsylvania and the contacts the defendant did have with Pennsylvania were too fortuitous to establish personal jurisdiction. *Id*. at 542-43.

In *Accuweather, Inc., v. Total Weather, Inc.*, 223 F. Supp. 2d 612, 617 (M.D. Pa. 2002), the court explained that the "something more" element necessary to establish purposeful availment must rise above the "fortuitous contacts" presented in *Morantz*, where personal jurisdiction was not established even though the defendant "actually sold products to Pennsylvania residents." The dispute in *Accuweather* centered on the defendant's interactive web site which allegedly infringed on the plaintiff's trademarks. *Id*. at 612. The defendants visited several potential customers in Pennsylvania, but no sales or contracts were made with Pennsylvania customers. *Id*. at 614. The plaintiff characterized these meetings in Pennsylvania as sufficient minimum contacts to establish personal jurisdiction. *Id*. at 617. But the court disagreed, explaining that the "few meetings" with potential customers were "even more attenuated than the 'fortuitous' contacts outlined in *Morantz*." *Id*. The court held that personal jurisdiction was lacking where defendant's web site is a "[*Zippo*] middle category site" and the defendant's other contacts with Pennsylvania "do not rise even to the level found in *Morantz* or *Desktop Technologies*." *Id.*

The Third Circuit agreed with this analytical framework in *Toys "R" Us, Inc., v. Step Two S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). The defendant in *Toys "R" Us* registered domain names that allegedly infringed on plaintiff's trademarks. *Id*. at 449. Via its web site, the defendant made two sales to residents of the

plaintiff's forum jurisdiction. *Id*. at 450. Those sales were directly facilitated by the plaintiff. *Id.* The court determined that the web sites were commercial and interactive on the *Zippo* scale, *id*. at 454, because customers could purchase merchandise, sign up to receive electronic newsletters and sign up for membership in a promotional club that offered games, *id*. at 450. Despite the commercial nature of the web sites, the court found that the purposeful availment element was not satisfied because the web sites were written entirely in Spanish, prices were listed in pesatas or Euros, merchandise could be shipped only to addresses in Spain, and none of the address portions of the web sites were designed to accommodate addresses in the United States. *Id*. at 454. The two sales made within the plaintiff's jurisdiction were "orchestrated by [the plaintiff], and it appeared that [the defendant] scarcely recognized that sales with [residents of the plaintiff's forum] had been consummated." *Id*. On these facts, the court concluded that the purposeful availment element was not satisfied, and therefore personal jurisdiction was not established. *Id*. at 455.

This court finds these cases instructive in the matter at hand. Accordingly, this court will evaluate personal jurisdiction based on internet contacts through the prism of *Zippo* and its progeny.

**III.**      **Discussion**

    **A.**      **Personal Jurisdiction**

Pagosa has challenged the exercise of personal jurisdiction by this court. Therefore, Hershey must prove that personal jurisdiction over Pagosa in this judicial district is proper. In its complaint, Hershey alleges that personal jurisdiction

is proper in this district because: 1) Pagosa, via its web site, is using the infringing slogan in advertising directed to the Commonwealth of Pennsylvania; 2) Pagosa distributes and sells products offered and sold in connection with their infringing slogan; and 3) Pagosa does business in the Commonwealth of Pennsylvania through its Web site and has agents in the Commonwealth of Pennsylvania.  (Doc. 18 ¶ 12.) Hershey alleges this conduct establishes the required minimum contacts with Pennsylvania to assert personal jurisdiction.  (*Id.*)

However, in its complaint and supporting documents, Hershey does not set forth any facts establishing its second and third jurisdictional claims: that Pagosa does business with or distributes products within Pennsylvania, and that it does so through "agents" in Pennsylvania.  The only facts in the record relating to this alleged activity are found in Pagosa's affidavit.[2]  (Doc. 20 Ex. 1.)  That affidavit states that Pagosa has never sold its products to distributers that resell in Pennsylvania; that Pagosa has no suppliers in Pennsylvania; and that Pagosa has no contracts with Pennsylvania entities or residents.  (*Id*. ¶¶ 14-16.)   The affidavit also states that Pagosa has no employees, contractors or agents in Pennsylvania.  (*Id*. ¶ 5.)  These facts are uncontroverted in the record.  Hershey has alleged no facts to support its conclusions that Pagosa does business with and distributes products in Pennsylvania and has agents here.  Therefore, the court is left to address only

---

[2]  The court is satisfied that both parties have submitted enough information to make a determination as to the factual support for Hershey's allegations. Hershey has not moved for jurisdictional discovery.

whether the attributes of Pagosa's web site establish a *prima facie* showing of minimum contacts with Pennsylvania sufficient to establish personal jurisdiction.[3]

Hershey contends that the Pagosa web site is, at minimum, an "interactive site" within the context of the *Zippo* analysis because the web site is available to Pennsylvania residents and visitors to the site may order products for delivery to Pennsylvania and sign a guest book. Hershey contends that Pagosa's web site contains advertising directed to Pennsylvania residents because viewers may select Pennsylvania as a shipping destination. Hershey asserts that this directed advertising is indicative of Pagosa's purposeful availment of the opportunity to do business with Pennsylvania residents. As such, Hershey asserts that under the *Zippo* analysis, this court's exercise of personal jurisdiction over Pagosa is proper. The court agrees with Hershey that the Pagosa web site is "interactive." But the nature and quality of the contacts between Pagosa and Pennsylvania do not justify personal jurisdiction over Pagosa in Pennsylvania.

While a web site may be viewed in a particular forum, that fact alone does not establish personal jurisdiction in that forum. *See Toys "R" Us*, 318 F.3d at 454. Something more must be shown to prove that the defendant "purposefully availed itself of conducting activity in the forum state." *Id*. Attempting to show

---

[3]   Hershey's characterization of Pagosa's Web site as "circulation of advertising materials" sufficient to justify general personal jurisdiction is unpersuasive. The case that Hershey relies upon in support of this assertion involved a defendant who engaged in specific circulation of printed advertising materials in trade publications with nationwide circulation *in addition to* sending promotional materials directly to customers in Pennsylvania and hiring a nationwide distributor to sell its products. *See Southco, Inc. v. Matdan Am. Corp.*, No. 98-5425, 1998 WL 848056 at *6-7 (E.D. Pa. Dec. 8, 1998). As explained in *Desktop Technologies*, "advertising on the Internet is similar to advertising in national publications, and advertising in national publications is not a basis for asserting personal jurisdiction." 1999 WL 98572, at *4 (citations omitted). Therefore, the court will analyze Hershey's claims under the specific jurisdiction framework.

"something more,"  Hershey points out that Pennsylvania is one of a number of shipping destinations that may be selected from the drop-down menu on the Pagosa web site. (Doc. 29 Ex. B at 2, 4.)  But the fact that the Pagosa web site lists Pennsylvania as a shipping destination does not demonstrate targeted activity toward Pennsylvania residents.  In *Zippo*, the defendant used its web site to establish accounts with approximately 3,000 Pennsylvania customers.  This conduct constituted "purposeful availment" because the defendant "repeatedly and consciously chose to process" the Pennsylvania customers' orders, knowing that doing so was "a conscious choice to conduct business with the residents of the forum state."  952 F. Supp. at 1126.  In the instant case, Pennsylvania is included *generally* with all of the other possible shipping destinations on the Pagosa web site. No additional facts have been advanced to show how the Pagosa web site specifically targets Pennsylvania.  The fact that the Pagosa web site lists Pennsylvania as one in a list of general shipping destinations, standing alone, does not demonstrate the purposeful availment of doing business in Pennsylvania.

        The commercial activity generated by the Pagosa web site fails to establish the required minimum contacts for this court to exercise personal jurisdiction.  The record reveals that  Pagosa has made approximately ten sales via its web site. (Doc. 20 Ex. 1 ¶ 19.)  None of those sales were made to Pennsylvania residents.  (*Id.)*  Pagosa's web site has a guest book that visitors may sign and leave comments.  (*Id*. at ¶ 20.)  Sixteen viewers have posted comments on the guest book, none of them Pennsylvania residents.  (*Id*. at ¶ 21.)  Pagosa has not shipped any products to Pennsylvania, and therefore it has not had occasion to make a conscious choice to do business with Pennsylvania residents.  Based on the holding in

*Morantz*, even if some of the sales or comments posted on Pagosa's web site had come from Pennsylvania, such activity is properly characterized as "fortuitous." Fortuitous contacts are an insufficient basis for exerting personal jurisdiction. *See Keeton*, 465 U.S. at 774. Therefore, any contacts the Pagosa web site did generate fail to establish the minimum contacts required to establish personal jurisdiction in Pennsylvania.

The outcome here is consistent with the Middle District's recent ruling that personal jurisdiction and venue are proper over another defendant in a suit by the same Plaintiff. In *Hershey Co. v. Cerreta Candy Co.*, No. 4:07-CV-00639, slip op. at 3, 8 (M.D. Pa. Feb. 7, 2008), the plaintiff The Hershey Company accused defendant Cerreta Candy Company of, *inter alia*, trademark violations on Cerreta's web site. Judge Jones found that personal jurisdiction over Cerreta was proper in this judicial district because Cerreta had shipped 77,000 retail units of its product for distribution into Pennsylvania. Customers in Pennsylvania "routinely" used Cerreta's website to order and receive Cerreta's products. In contrast, the record before the court in this matter is devoid of any facts showing contacts between Pagosa and Pennsylvania via the Pagosa web site.

As the foregoing discussion makes clear, Pagosa's operation of a web site that may be viewed in Pennsylvania and from which products may selected for shipment into Pennsylvania does not create constitutionally sufficient minimum contacts with this jurisdictional district for this court to exercise personal jurisdiction over Pagosa.

**B.   <u>Venue</u>**

Because Pagosa does not have sufficient minimum contacts with Pennsylvania for this court to exercise personal jurisdiction over Pagosa, venue in this judicial district is not proper for this case.  *See* 28 U.S.C. § 1391(c).  Pagosa does not reside in the Middle District of Pennsylvania and this district is not a district in which a substantial part of the events giving rise to this claim occurred. *See id*; *supra* § III A.

Venue defects may be corrected via a transfer pursuant to 28 U.S.C. § 1406(a), which provides that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  This statute authorizes a district court to transfer an action "however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).  "It is clear that before a transfer under [§] 1406(a) can occur, a case must have been filed in a district where venue was improper." *Buhl v. Jeffes*, 435 F.Supp. 1149, 1151 (M.D. Pa. 1977).

While venue here is not appropriate, a transfer under § 1406(a) is in the interest of justice.  Analyzing which other forum would be appropriate, the court finds that the defendant is subject to personal jurisdiction in Colorado.  Pagosa "resides" there, making venue proper in Colorado as well.[4]  The court finds that

---

[4] See 28 U.S.C § 1392(c) which provides in pertinent part that ". . . a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  Because Pagosa a corporation organized and existing under the

(continued...)

Hershey has pleaded a cognizable claim and it is in the interest of justice to transfer the case instead of dismiss it.  Therefore, the action will be transferred to the District of Colorado.

**IV.**          **Conclusion**

          The court finds that plaintiff Hershey has failed to carry its burden of proving that Pagosa has sufficient minimum contacts with Pennsylvania to warrant a constitutional exercise of personal jurisdiction by this court over Pagosa.  Because personal jurisdiction is not proper in this judicial district, venue may not lie here.  In the interest of justice, the case will be transferred to the District of Colorado.

          An appropriate order will issue.

<u>                                                                              </u>                     s/Sylvia H. Rambo
                    SYLVIA H. RAMBO
                    United States District Judge

Dated:  April 10, 2008.

_____

          [4](...continued)
laws of the state of Colorado with its principal place of business also located in Colorado, it is subject to personal jurisdiction in Colorado.  Therefore, for purposes of venue, Pagosa resides in Colorado.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**THE HERSHEY COMPANY,**     :     **NO. 1:07-CV-1363**
**HERSHEY CHOCOLATE &**     :
**CONFECTIONERY CORPORATION** :
**and HERSHEY ENTERTAINMENT &** :
**RESORTS COMPANY,**     :
    :
       **Plaintiffs**     :
    :
       **v.**     :
    :
**PAGOSA CANDY COMPANY, THE** :
**CHOCOLATE ROBIN**     :
**CORPORATION, and ROBIN L.** :
**CARPENTER,**     :
    :
       **Defendant**     :

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** the motion to dismiss the amended complaint for lack of personal jurisdiction or, in the alternative, to transfer the action filed by defendants Pagosa Candy Company, The Chocolate Robin Corporation and Robin L. Carpenter is **GRANTED**.  The Clerk of court shall transfer the captioned matter to the United States District Court for the District of Colorado.

The Clerk of court shall close the file in this District.

                 s/Sylvia H. Rambo
                 SYLVIA H. RAMBO
                 United States District Judge

Dated:  April 10, 2008.

18